Slip Op. 20-78

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| LUOYANG BEARING CORPORATION (GROUP)<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>THE TIMKEN COMPANY,<br><br>Defendant-Intervenor. | Before: Gary S. Katzmann, Judge<br>Court No. 19-00026 |

### <u>OPINION</u>

[The court denies Plaintiff's motion and enters judgment for Defendant because Plaintiff failed to exhaust administrative remedies before Commerce.]

Dated: June 1, 2020

Edmund W. Sim, Appleton Luff Pte Ltd, of Washington, DC, argued for plaintiff. With him on the briefs were Kelly A. Slater and Jay Y. Nee.

Kelly A. Krystyniak, Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant. With her on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and L. Misha Preheim, Assistant Director. Of counsel was Nikki Kalbing, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC. Of counsel on the brief was James Henry Ahrens II.

Geert De Prest, Schagrin Associates, of Washington, DC, argued for defendant-intervenor. With him on the brief was Nicholas J. Birch.

Katzmann, Judge:   This case implicates the exhaustion of administrative remedies requirement of the Customs Courts Act of 1980, 28 U.S.C. § 2637(d) (2018), and provides occasion to consider the "futility" exception to that statute.

Plaintiff Luoyang Bearing Corporation (Group) ("Luoyang"), a foreign producer and exporter of tapered roller bearings ("TRBs")[1] from China, brought an action against the United States ("the Government") to challenge a final determination by the United States Department of Commerce ("Commerce"), Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From the People's Republic of China: Final Results of Antidumping Duty Administrative Review, 2016–2017, 84 Fed. Reg. 6,132–34 (Dep't Commerce Feb. 26, 2019) ("Final Results"), in which Commerce denied Luoyang's separate rate application and applied the country-wide antidumping ("AD") rate after finding de facto government control over Luoyang's board of directors.   Mem. of P. & A. in Supp. of Pl. Luoyang Bearing Corp. (Grp.)'s R. 56.2 Mot. for J. on the Agency R. at 1, Aug. 1, 2019, ECF No. 28 ("Pl.'s Br.").   Luoyang failed to raise any arguments to Commerce contesting an adverse preliminary determination before bringing a challenge to the court.   Luoyang requests that the court remand Commerce's decision as "not in accordance with law or unsupported by substantial evidence."   Compl. at 4, Mar. 4, 2019, ECF No. 4.   The Government and Defendant-Intervenor the Timken Company ("Timken") respond that the court should deny Luoyang's motion for judgment on the agency record for failing to first exhaust administrative remedies.   Def.'s Opp'n to Pl.'s Mot. for J. upon the Admin. R. at 6–9, Oct. 1, 2019, ECF No. 37 ("Def.'s Br."); Resp. Br. of Timken at 1, Oct. 1, 2019, ECF No. 36 ("Def.-Inter.'s Br.").   The court denies

---

[1]   A "bearing" is "a machine part in which another part (such as a journal or pin) turns or slides."   Bearing, Merriam Webster, https://www.merriam-webster.com/dictionary/bearing (last visited May 18, 2020).   "TRBs are a type of antifriction bearing made up of an inner ring (cone) and an outer ring (cup).   Cups and cones sell either individually or as a preassembled 'set.'"   NTN Bearing Corp. of Am. v. United States, 127 F.3d 1061, 1063 (Fed. Cir. 1997).

Luoyang's motion without reaching the merits of its claims because Luoyang failed to first exhaust its administrative remedies before Commerce.

## BACKGROUND

### I.      *Legal and Regulatory Framework*

Congress's AD statute empowers Commerce to impose remedial duties on imported goods when those goods are sold in the United States at less-than-fair value and the International Trade Commission determines that the domestic industry is thereby "materially injured, or is threatened with material injury." See 19 U.S.C. § 1673(2)(A)(i)–(ii) (2018); Diamond Sawblades Mfrs. Coal. v. United States, 866 F.3d 1304, 1306 (Fed. Cir. 2017); Shandong Rongxin Imp. & Exp. Co. v. United States, 42 CIT __, __, 331 F. Supp. 3d 1390, 1394 (2018), aff'd, 779 F. App'x 744 (Fed. Cir. 2019) ("Rongxin"). "Sales at less than fair value are those sales for which the 'normal value' (the price a producer charges in its home market) exceeds the 'export price' (the price of the product in the United States)." Apex Frozen Foods Private Ltd. v. United States, 862 F.3d 1322, 1326 (Fed. Cir. 2017) (quoting Union Steel v. United States, 713 F.3d 1101, 1103 (Fed. Cir. 2013)). In these instances, "the amount of the [AD duty] is 'the amount by which the normal value exceeds the export price (or the constructed export price) for the merchandise.'" Rongxin, 331 F. Supp. 3d at 1394 (quoting 19 U.S.C. § 1673). Upon request, Commerce may conduct an administrative review of its AD duty determination and recalculate the applicable rate. 19 U.S.C. § 1675(a)(1)–(2); see also Gallant Ocean (Thai.) Co. v. United States, 602 F.3d 1319, 1321 (Fed. Cir. 2010); Rongxin, 331 F. Supp. 3d at 1394.

When a proceeding concerns a non-market economy ("NME") country,[2] such as China, "Commerce presumes that all respondents to the proceeding are government-controlled and therefore subject to a single country-wide [AD] duty rate." Rongxin, 331 F. Supp. 3d at 1394 (citing Dongtai Peak Honey Indus. v. United States, 777 F.3d 1343, 1349–50 (Fed. Cir. 2015)). See also Sigma Corp. v. United States, 117 F.3d 1401, 1405 (Fed. Cir. 1997). However, respondents may rebut this presumption of government control and establish eligibility for a rate separate from the country-wide rate by demonstrating freedom from both de jure (legal) and de facto (factual) government control. Dongtai Peak Honey, 777 F.3d at 1350; Rongxin, 331 F. Supp. 3d at 1394.

Prior to challenging a determination by Commerce before the court, both statute, 28 U.S.C. § 2637(d), and Commerce's own regulation, 19 C.F.R. § 351.309(c)(2), require respondents to exhaust all administrative remedies available at the agency level. The statute, in relevant part, states that "the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d). The court may exercise its discretion to excuse a respondent from this procedural administrative exhaustion requirement in specific narrow circumstances. See id. (requiring exhaustion "where appropriate"). One such narrow circumstance is when the respondent can demonstrate that raising the issue would have been futile. Corus Staal BV v. United States, 502 F.3d 1370, 1379 (Fed. Cir. 2007); Itochu Bldg. Prods. v. United States, 733 F.3d 1140, 1146 (Fed. Cir. 2013).

---

[2] A non-market economy country is "any foreign country that [Commerce] determines does not operate on market principles of cost or pricing structures, so that sales of merchandise in such country do not reflect the fair value of the merchandise." 19 U.S.C. § 1677(18)(A).

## II.      *Factual and Procedural History*

On June 7, 2017, Commerce published a notice of opportunity to request an administrative

review of its AD order on TRBs from China for the period of June 1, 2016 through May 31, 2017.

Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation: Opportunity to

Request Administrative Review, 82 Fed. Reg. 26,441, 26,441 (Dep't Commerce June 7, 2017).

Luoyang, among the two largest Chinese TRB exporters during the period of review ("POR"),

timely requested an administrative review, and Commerce selected Luoyang for individual

examination.  See 19 U.S.C. § 1677f-1 (2012); Mem. from I. Baig (AD/CVD Operations) to M.

Skinner (AD/CVD Operations), re: Selection of Respondents for Individual Review at 5 (Dep't

Commerce Aug. 24, 2017), P.R. 41.  In response, Commerce issued an initial questionnaire to

Luoyang.  See Letter from Luoyang to Sec'y of Commerce, re: Sec. A Resp. (Sept. 29, 2017), P.R.

100.  Commerce later requested supplemental questionnaire responses on November 9, 2017, to

which Luoyang responded on November 27, 2017.  Letter from S. Thompson (AD/CVD

Operations) to Luoyang, re: Suppl. Sec. A Questionnaire (Dep't Commerce Nov. 9, 2017), P.R.

127; Letter from Luoyang to Sec'y of Commerce, re: Suppl. Sec. A Resp. (Nov. 27, 2017), P.R.

133 ("Luoyang's Suppl. Sec. A Resp.").  That response constitutes the final communication

between Luoyang and Commerce regarding this review prior to the initiation of the instant case.

Commerce published preliminary results on July 12, 2018, denying Luoyang separate rate

status because it failed to rebut the presumption of governmental control over its export activities.

Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from the People's Republic

of China: Preliminary Results and Intent to Rescind the Review in Party: 2016–2017, 83 Fed. Reg.

32,263 (Dep't Commerce July 12, 2018) ("Preliminary Results").  Consequently, Luoyang was

subject to the 92.84 percent China-wide AD rate.  Id.  Commerce based its decision on Luoyang's

corporate ownership structure and associated shareholder control.  Mem. from G. Taverman (AD/CVD Operations) to W. Frankel (AD/CVD Operations), re: Decision Mem. for the Prelim. Results of the 2016–17 AD Duty and Admin. Review of TRBs and Parts Thereof, Finished and Unfinished, from the People's Republic of China at 10 (July 3, 2018), P.R. 223 ("PDM").  Luoyang is majority owned by Henan Machinery, which is wholly owned by Henan SASAC, a government-owned entity that oversees China's assets in Henan Province.  Id.  Commerce found government control because the Chinese government, as majority shareholder, "exercises its rights inherent in majority ownership as would be expected."  Id.  "Because of . . . the control that [government] ownership on its own establishes, we preliminarily conclude that Luoyang does not satisfy the criteria demonstrating an absence of de facto government control over export activities, consistent with our determination in the [Final Results of Redetermination Pursuant to Diamond Sawblades Manufacturers' Coalition v. United States, (Dep't Commerce Dec. 1, 2015), available at http://enforcement.trade.gov/remands/15-92.pdf.]"  Id.  Luoyang did not submit an administrative case brief between the publication of the Preliminary Results and the Final Results.  See Pl.'s Reply Br. in Supp. of Pl. Luoyang's R. 56.2 Mot. for J. on Agency R. at 2, Oct. 21, 2019, ECF No. 39 ("Pl.'s Reply"); Def.'s Br. at 6; Def.-Inter.'s Br. at 7.  Thus, Commerce continued to apply the countrywide rate to Luoyang in the Final Results.  Final Results at 6,133.

Luoyang commenced this action on March 4, 2019.  Summons, ECF No. 1; Compl.  On August 1, 2019, Luoyang moved for judgment on the agency record, challenging Commerce's Final Results as neither supported by substantial evidence or otherwise in accordance with law. Pl.'s Br. at 1.  The Government and Timken responded on October 1, 2019.  See Def.'s Br.; Def.-Inter.'s Br.  Luoyang replied on October 21, 2019.  Pl.'s Reply.  The court held oral argument via teleconference on April 8, 2020.  ECF No. 49.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(b)(1)(B)(i).   The standard of review in this action is set forth in 19 U.S.C. § 1516a(b)(1)(B)(i): "[t]he court shall hold unlawful any determination, finding or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  As noted, however, preceding a review by the court of the merits of a given claim, a party challenging agency action must have first exhausted its administrative remedies or demonstrated to the court that it should be exempted from that requirement.  See Boomerang Tube LLC v. United States, 856 F.3d 908, 912 (Fed. Cir. 2017).

## DISCUSSION

For the reasons stated below, the court denies Luoyang's motion for judgment on the agency record, without reaching the merits of its claims, because Luoyang failed either to exhaust its administrative remedies before Commerce or to articulate a persuasive ground for the court to exercise its discretion to exempt Luoyang from so doing.

> **I.      *Luoyang Did Not Exhaust its Administrative Remedies, and Exhaustion Would Not Have Been Futile.***

> **A.      *Parties' Contentions in Context***

As has been recited, the burden is on the separate rate applicant to overcome the presumption of government control in an NME.  Preliminarily, Commerce found that Luoyang was ineligible for a separate rate because the Chinese government indirectly owns a majority of its shares.  PDM at 10.  The record demonstrates, and Luoyang does not contest, that Luoyang's last communication to Commerce occurred on November 27, 2017, in which it provided answers to Commerce's supplemental questionnaire responses -- answers that resulted in a preliminary denial

of its separate rate application.  <u>See</u> Luoyang's Suppl. Sec. A Resp..; Pl.'s Reply at 2.  In other

words, it is undisputed that Luoyang failed to exhaust its administrative remedies.

 The Government and Timken argue that Luoyang's claims should be dismissed because

Luoyang did not exhaust its administrative remedies before Commerce as required by statute and

Commerce's regulations.  <u>See</u> Def.'s Br. at 6–9; Def.-Inter.'s Br. at 6–9.  Luoyang contends that,

because evidence of its ownership and shareholder structure did not change between the

publication of the <u>Preliminary Results</u> and the <u>Final Results</u> and Commerce used this evidence to

deny Luoyang a separate rate, it would have been futile for Luoyang to submit a case brief to

Commerce raising arguments to challenge the preliminary denial of a separate rate.  Pl.'s Reply at

2; <u>see</u> PDM at 10.  Luoyang acknowledges the narrowness of the futility exception but argues that

"an adverse separate rates decision before Commerce was more than just 'likely:' it was virtually

guaranteed."  Pl.'s Reply at 4 (quoting <u>Corus Staal</u>, 502 F.3d at 1379).  To support this contention,

Luoyang highlights Commerce's practice of reviewing similarly situated entities that, in

Luoyang's view, is "focused almost exclusively around any degree of government ownership in

the respondent, however attenuated."  Pl.'s Reply at 5.  As a result, Luoyang argues, "it would

appear that any degree of government ownership in a respondent renders futile any efforts for a

respondent to demonstrate otherwise a lack of government control over its export operations,

whether substantial evidence bears this out or not."  <u>Id.</u>  Accordingly, Luoyang argues that the

court should employ the discretion that 28 U.S.C. § 2637(d) provides to waive the otherwise strict

requirement of administrative exhaustion by a respondent in an investigation by Commerce and

thus hear its claim.  <u>Id.</u> at 6.  To address this question, the court first examines the law of

administrative exhaustion, and then the futility exception.

### B.    Basic Principles

The Federal Circuit has made clear that 28 U.S.C. § 2637(d), the exhaustion statute, "indicates a congressional intent that, absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies." Corus Staal, 502 F.3d at 1379.   Under this framework, the Federal Circuit explained that respondents in Commerce investigations are "procedurally required to raise" all issues and arguments in case briefs to Commerce "at the time Commerce [is] addressing the issue." Dorbest Ltd. v. United States, 604 F.3d 1363, 1375 (Fed. Cir. 2010) (citing Mittal Steel Point Lisas Ltd. v. United States, 548 F.3d 1375, 1383 (Fed. Cir. 2008)).   The requirement derives from concerns regarding "[s]imple fairness to those who are engaged in the tasks of administration, and to litigants, [requiring] as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." Id. (quoting United States v. L.A. Tucker Truck Lines, 344 U.S. 33, 37 (1952)).   "[A] failure to enforce the exhaustion of administrative remedies principle could lead to 'frequent and deliberate flouting of the administrative processes [that] could weaken the effectiveness of an agency by encouraging people to ignore [administrative] procedures.'" Budd Co., Wheel & Brake Div. v. United States, 15 CIT 446, 453, 773 F. Supp. 1549, 1555 (1991) (quoting McKart v. United States, 395 U.S. 185, 195 (1969)).   Further, the Federal Circuit has explained that the exhaustion requirement protects "an agency's interest in being the initial decisionmaker . . . [and] serve[s] judicial efficiency by promoting development of an agency record that is adequate for later court review and by giving an agency a full opportunity to correct errors and thereby narrow or even eliminate disputes." Itochu Bldg. Prods., 733 F.3d at 1145. See also McCarthy v. Madigan, 503 U.S. 140, 145 (1992).   Respondents can meet the exhaustion requirement by submitting a case

brief to Commerce after the publication of preliminary results that includes "all arguments that

continue in the submitter's view to be relevant" to the final results, "including any arguments

presented before the date of publication of the preliminary determination or preliminary results."

19 C.F.R. § 351.309(c)(2).  See Corus Staal, 502 F.3d at 1378.  "The exhaustion requirement in

this context is therefore not simply a creature of court decision, as is sometimes the case, but is a

requirement explicitly imposed by the agency as a prerequisite to judicial review."  Corus Staal,

502 F.3d at 1379.[3]

Exceptions to the exhaustion requirement are limited, including where raising the claim is

futile or where the question is one of pure law and does not require further factual development.

Itochu Bldg. Prods., 733 F. Supp. 3d at 1146; Zhongce Rubber Grp. Co. v. United States, 42 CIT

__, __, 352 F.3d 1276, 1279–80 (2018), aff'd, 787 F. App'x 756 (Fed. Cir. 2019).  See also

Luoyang Bearing Factory v. United States, 26 CIT 1156, 1186 n.26, 240 F. Supp. 2d 1268, 1297

n.26 (2002) (listing exceptions as (1) futility; (2) a subsequent court decision that may impact the

agency's decision; (3) a pure question of law; or (4) when plaintiff had reason to believe the agency

would not follow established precedent).  Relevant here, the court may excuse the exhaustion of

administrative remedies requirement in situations where plaintiffs prove futility by showing that

---

[3] The Government notes that "Commerce considers arguments raised in case and rebuttal case briefs, and can -- indeed, often does -- alter the methodology applied, or correct mistakes, in its final determination." Def.'s Resps. to Ct.'s Questions for Oral Arg. at 6, Apr. 6, 2020, ECF No. 47 ("Def.'s Suppl. Br.").  The Government observes that "[c]ase briefs and rebuttal case briefs offer a mechanism through which interested parties can raise and debate points of law or fact arising during the proceedings, and before Commerce makes a final determination." Id. at 6. Respondents can use this opportunity to "flag any errors that Commerce may have made in its preliminary determinations, or point to evidence on which it believes Commerce should rely." Id. "[T]he case brief process almost certainly reduces the volume of litigation arising from Commerce's determinations" and elsewhere "permits Commerce to develop the administrative record and address arguments that are raised, facilitating judicial review of Commerce's decisions." Id.

exhaustion would "require[] [them] to go through obviously useless motions in order to preserve their rights." Corus Staal, 502 F.3d at 1379 (citations omitted); Itochu Bldg. Prods., 733 F.3d at 1146 (explaining that the futility exception may apply "where it is clear that additional filings with the agency would be ineffectual"). However, the futility exception to the administrative exhaustion requirement "is a narrow one." Corus Staal, 502 F.3d at 1379. "The mere fact that an adverse decision may have been likely does not excuse a party from a statutory or regulatory requirement that it exhaust administrative remedies." Id. (citation omitted).

### C.    Analysis

Federal Circuit precedent, analyzing and rejecting claims of futility very similar to that posed by Luoyang, informs the court's disposition of the instant litigation. In Corus Staal, a seminal case addressing the futility exception to administrative exhaustion, the Federal Circuit reviewed a respondent's argument that addressing an issue in a case brief to Commerce would have been futile because it had already presented those arguments to Commerce in its questionnaire response and received an adverse preliminary determination. 502 F.3d at 1378–81. There, Corus "claim[ed] that it put Commerce on notice as to its position with regard to the [] issue in its . . . submission in response to Commerce's request for information, and Commerce responded by rejecting those arguments in the preliminary results." Id. at 1378. Corus maintained that "in the past Commerce had consistently taken a position contrary to Corus's legal arguments regarding [the issue] and was therefore unlikely to accept those arguments if Corus pressed them in its case brief." Id. Luoyang's argument is nearly identical to the one Corus presented to the Federal Circuit. See Pl.'s Reply at 5 ("[B]ecause Luoyang effectively has no chance of success to be gained by raising its de facto separate rates arguments before Commerce based on additional and

arguably substantial evidence of non-governmental control over its export operations, it is in effect pointless for Luoyang to raise those arguments in the first place.").

The Federal Circuit in Corus Staal rejected the plaintiff's argument: "it is not obvious that the presentation of [Corus's] arguments to the agency would have been pointless[,]" and "Corus has provided nothing by way of affirmative justification for its failure to raise the . . . issue in its case brief." 502 F.3d at 1380–81. The Federal Circuit explained that "[t]he response that Commerce gave in the preliminary results . . . was brief and was expressly designated as preliminary; it was not designed to be Commerce's last word on the matter." Id. at 1380. Indeed, requiring respondents to set forth their arguments in a case brief before the final determination has "potential value either by resulting in possible relief for [respondents] or at least providing the agency an opportunity to set forth its position in a manner that would facilitate judicial review." Id. This requirement is particularly important where the issue involves the exercise of Commerce's discretion, such as in policy or fact-based methodology questions where Commerce could change its determination based on interested party arguments. See id. ("Even if it is unlikely that Commerce would adopt Corus's legal arguments . . . , it was still possible that upon full airing, Commerce might have accepted Corus's factual showing that it had not absorbed antidumping duties, thereby obviating the need for judicial review."). Id. Crucially, the court noted that a likely adverse decision without more "does not excuse a party from a statutory or regulatory requirement that it exhaust administrative remedies." Id. at 1379. In other words, Corus failed to exhaust its administrative remedies with the agency and did not present facts indicating that further argumentation before Commerce would have been futile. Id. at 1381. Accordingly, the Federal Circuit ruled that this court did not abuse its discretion by refusing to hear the merits of the claim. Id.

Luoyang's argument cannot prevail for the reasons the Federal Circuit relied on in <u>Corus</u> <u>Staal</u>. <u>See</u> <u>id.</u> at 1380. Luoyang had the same opportunity that the respondent in <u>Corus Staal</u> had: to present legal arguments concerning Commerce's practice and its application in this instance and to present factual issues that Luoyang asserts support its claims. Luoyang chose to do neither. Commerce's initial separate rate denial was preliminary, and Luoyang was required to give Commerce a full opportunity to address Luoyang's arguments before bringing a challenge to the court. <u>See</u> <u>id.</u> Despite Commerce's consistent position regarding indirect ownership and de facto independence from government control, indicating that an adverse final decision may have been likely, Luoyang was still required to present a case brief. <u>See</u> <u>id.</u> at 1379–80. The agency decision at issue was whether the respondent, based on the agency's criteria, had overcome the presumption of government control so as to be eligible for separate rate status. That decision involves the evaluation of facts that vary substantially from case to case and criteria that have frequently been the subject of litigation. <u>See, e.g.</u>, <u>Shandong Rongxin Import & Export Co. v. United States</u>, 43 CIT __, 355 F. Supp. 3d 1365 (2019); <u>Zhejiang Quzhou Lianzhou Refrigerants Co. v. United States</u>, 42 CIT __, 350 F. Supp. 3d 1308 (2018); <u>Advanced Tech. & Materials Co. v. United States</u>, 37 CIT __, 938 F. Supp. 2d 1342 (2013), <u>aff'd</u>, 581 F. App'x. 900, 901 (Fed. Cir. 2014). Indeed, in its Separate Rate Certification filed at the outset of this annual review, Luoyang certified that it had in fact received separate rate status in several prior reviews of the AD order on TRBs from China. Letter from Luoyang to Sec'y of Commerce, re: Luoyang's Separate Rate Certification at 3 (Aug. 31, 2017), P.R. 66. <u>See also</u> <u>Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from the People's Republic of China: Final Results of 2003–2004 Administrative Review</u>, 71 Fed. Reg. 2,517 (Dep't Commerce Jan. 17, 2006); <u>Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from the People's Republic of China: Final Results of 2000–</u>

2001 Administrative Review, 67 Fed. Reg. 68,991 (Dep't Commerce Nov. 14, 2002); Tapered

Roller Bearings and Parts Thereof, Finished and Unfinished, From the People's Republic of China;

Final Results of 1999–2000 Administrative Review, 66 Fed. Reg. 57,421 (Dep't Commerce Nov.

15, 2001).  Luoyang's premise -- that an adverse decision in the 2016–2017 review was "virtually

guaranteed" -- is hardly self-evident.  See Pl.'s Reply at 4.  Luoyang's assertions, without more,

fail to justify an exercise of the court's discretion to exempt it from the exhaustion requirement of

28 U.S.C. § 2637(d).[4]

## CONCLUSION

Considering all the relevant circumstances, the court determines that Luoyang has failed to

demonstrate futility and concludes that no justification has been shown for making an exception

---

[4] The Government argues, Def.'s Suppl. Br. at 3–4, and the court agrees, that the present case is distinct from Itochu Building Products.  See 733 F.3d 1140.  That case presented rare circumstances not applicable here.  There, in a changed circumstances review involving a statute governing administrative reviews, the plaintiff had "submitted comments, met with Commerce officials, and provided legal authority" before Commerce issued its preliminary results, but failed to later submit a case brief.  Id. at 1142.  The Federal Circuit ruled that exhaustion need not apply to arguments regarding the effective date of the revocation when there was "no reasonable prospect" that Commerce, based on its interpretation of the statute, would have modified the effective date.  Id. at 1146–48.  The Federal Circuit determined that the futility exception should apply where "Commerce had heard everything on the issue that [the plaintiff] had to say" prior to the publication of the preliminary results.  Id. at 1147.  The Itochu Building Products court also distinguished the result required by Commerce's interpretation of a statute in that case from the fact dependent determination in Corus Staal, 502 F.3d 1370, in which Commerce may have changed its position based on additional factual and legal arguments.  Itochu Bldg. Prods., 733 F.3d at 1147–48.  Like the plaintiff in Corus Staal, Luoyang could have made additional arguments or highlighted record evidence that Commerce could then adopt or address on the administrative record.  Second, as the Government and Timken note, the determination at issue here was a fact-based methodological one.  Def.'s Suppl. Br. at 2; Resp. of Timken to Questions for Oral Arg. at 2, Apr. 6, 2020, ECF No. 48.  That is, Commerce's separate rate determination was fact specific, unlike the determination at issue in Itochu Building. Products.  See 733 F.3d at 1148; PDM at 6–8.  In short, the court finds that this case is similar to Corus Staal, 502 F.3d at 1379, in which the Federal Circuit required exhaustion, and unlike Itochu Building Products, in which it applied the futility exception.  See 733 F.3d at 1147–48.

to the exhaustion requirement set forth in 28 U.S.C. § 2637(d).  Pursuant to USCIT Rule 56, the

court will enter judgment in favor of Defendant.

       **SO ORDERED.**

*/s/      Gary S. Katzmann*
Judge

Dated:  June 1, 2020
       New York, New York